IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02060-CMA-MJW

TERANCE DEJUAN WILSON,

Plaintiff,

v.

C.S.P. WARDEN ROMERO,
C.S.P. ASST. WARDEN LITTLE,
C.S.P. MAJOR NUNEZ,
C.S.P. LT. REED,
C.S.P. SGT. LEFEBRE,
C.S.P. SGT. GOLD,
C.S.P. C.O. PARLETTE,
C.S.P. CPT. BARBERO,
C.S.P. SGT. CHASE,
C.S.P. LT. MCVEIGH,
C.S.P. NURSE ASHLEY DAVIS,
C.S.P. LT. LANGONI,
C.O. LEA,
GRIEVANCE OFFICER ANTHONY A. DECESARO,
C.S.P. SGT. ORTIZ,
C.S.P. C.M. OLIVETTE,
C.S.P. NURSE DEBBIE ROWE,
C.S.P. NURSE GARCIA,
C.S.P. DOCTOR TANSEY,
C.S.P. C.O. VAUGN,
C.S.P. (UNKNOWN SGT. IN B-UNIT)
C.S.P. UNKNOWN OFFICER (A-UNIT CONTROL)
C.S.P. C.O. MURPHY,
C.S.P. C.O. BARNES, and
C.M. WAGNER,

Defendants.

**REPORT & RECOMMENDATION ON THE MOTION TO DISMISS FOURTH
AMENDED COMPLAINT (Docket No. 48)**

**Michael J. Watanabe**
**United States Magistrate Judge**

This case is before the Court pursuant to a memorandum (Docket No. 49)

referring the subject motion (Docket No. 48) entered by Judge Christine M. Arguello on

May 4, 2017. Now before the Court is the Motion to Dismiss Fourth Amended Complaint

(Docket No. 48). The Court has carefully considered the motion, the Response (Docket

No. 50), and the Reply (Docket No. 51). The Court has taken judicial notice of the

Court's file and has considered the applicable Federal Rules of Civil Procedure and

case law. The Court now being fully informed makes the following findings of fact,

conclusions of law, and recommendation.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## Allegations[1]

Plaintiff, who proceeds pro se,[2] brings this action under 42 U.S.C. § 1983,

alleging a variety of actions by Defendants relating to his incarceration by the Colorado

---

[1] For the purposes of considering the motion, the Court takes the following facts from the Fourth Amended Complaint (Docket No. 44). The factual allegations in Plaintiff's Fourth Amended Complaint are presumed true unless they are conclusory or contradicted by other, more specific allegations. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).("conclusory and formulaic recitations" of the elements "are insufficient to survive a motion to dismiss"); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 152 (2d Cir. 2014) (holding that "general allegations that are contradicted by more specific allegations in the Complaint" need not be accepted as true (quotation omitted)).

[2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). The Court, however, should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same

Department of Corrections ("CDOC") in the Colorado State Penitentiary ("CSP"). In short, Plaintiff purports to bring Eighth Amendment cruel and unusual punishment claims against 26 individuals. The Court briefly summarizes them herein, divided by Defendant.

Defendant Romero

Plaintiff alleges that Defendant Romero was informed that Plaintiff was being targeted by white supremacists and had been accused of being a snitch and a sex offender. (Docket No. 44 at 7). Plaintiff further alleges that Defendant Romero failed to protect him from an attack by two white supremacists that occurred on July 24, 2016. (*Id.*) Plaintiff maintains that he suffered serious injuries as a result of the attack. (*Id.* at 8). Plaintiff also alleges that Defendant Romero failed to take reasonable measures to prevent an attack on August 3, 2016 during which Plaintiff was attacked with feces. (*Id.*) Plaintiff maintains that another inmate showed him a blade that same day and Plaintiff was subsequently threatened because he complained to other Defendants. (*Id.*) Plaintiff alleges that Defendant Romero "failed to respond or investigate reasonably, and failed to take reasonable steps to exercise protection from assault and abate further risk of assault." (*Id.*) Plaintiff further alleges that Defendant Romero "was grossly negligent" because of actions allegedly taken by Defendant Rowe. (*Id.*) Plaintiff maintains that Defendant Romero is liable for understaffing the medical facility in the prison. (*Id.*) Plaintiff alleges that Defendant Romero, among others, has failed to investigate the "systematic" harassment he has experienced while in prison. (*Id.*) Plaintiff also alleges that he was attacked by other inmates while sleeping on August 31, 2016. (*Id.* at 9).

procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

Plaintiff alleges that Defendant Romero continually disregarded risks to his safety. (*Id.*) In sum, Plaintiff's allegations against Defendant Romero relate to this Defendant's supervisory role as the Warden at CSP. Plaintiff does not allege any direct action or personal participation by this Defendant.

Defendant Little

Plaintiff alleges that Defendant Little, the Assistant Warden at CSP, also was informed that Plaintiff was a target of white supremacists and "failed to protect" Plaintiff. (Docket No. 44 at 7). Similar to his allegations against Defendant Romero, Plaintiff alleges that Defendant Little failed to protect him from the feces attack on August 3, 2016 and failed to respond or investigate reasonably after Plaintiff complained after being shown a blade by another inmate. (*Id.* at 8). Plaintiff alleges that Defendant Little is responsible for understaffing the medical facility and negligent due to inaction relating to the alleged negligence of other Defendants. (*Id.*) Plaintiff alleges that Defendant Little continually disregarded risks to his safety and "failed to enforce policies" and acquiesced in unconstitutional behaviors and prison conditions. (*Id.* at 9-10). Plaintiff further alleges that he was attacked on August 31, 2016 while sleeping and that Defendant Little continually disregarded the risk Plaintiff faced in prison. (*Id.* at 10). Plaintiff maintains that Defendant Little's failure to segregate him in prison violated Plaintiff's constitutional rights. (*Id.*) In sum, Plaintiff's allegations against Defendant Romero relate to this Defendant's supervisory role as the Assistant Warden at CSP. Plaintiff does not allege any direct action or personal participation by this Defendant.

<u>Defendant Reed</u>

Plaintiff alleges that the March 19, 2016 attack during which two inmates associated with the Sureños gang attacked him "was directly caused by" Defendant Reed because of this Defendant's disregard of a known risk to Plaintiff. (Docket No. 44 at 7). Plaintiff states that he informed Defendant Reed about the August 31, 2016 attack. (*Id.* at 9). As with the prior Defendants, Plaintiff includes a general allegation that Defendant Reed's failure to segregate him while in prison has resulted in a deprivation of his constitutional rights. (*Id.*) Plaintiff does not allege any direct action or personal participation by this Defendant.

<u>Defendant Nunez</u>

Plaintiff alleges that Defendant Nunez was aware that he was targeted by other inmates and failed to protect him. (Docket No. 44 at 7). Similar to his allegations against Defendants Romero and Little, Plaintiff alleges that Defendant Nunez failed to protect him from the feces attack on August 3, 2016, and failed to respond or investigate reasonably after Plaintiff complained that he was shown a blade by another inmate. (*Id.* at 8). As with the prior Defendants, Plaintiff includes a general allegation that Defendant Nunez's failure to segregate him while in prison has resulted in a deprivation of his constitutional rights. (*Id.*) Plaintiff further alleges that he was attacked on August 31, 2016 while sleeping and that Defendant Nunez continually disregarded the risk Plaintiff faced in prison. (*Id.* at 9). Plaintiff does not allege any direct action or personal participation by this Defendant.

Defendant Lefebre

Plaintiff's makes a general allegation that Defendant Lefebre was deliberately indifferent to the alleged systematic harassment Plaintiff faced in prison. (Docket No. 44 at 8-9). Plaintiff also alleges that Defendant Lefebre, among others, told other inmates that Plaintiff is "a piece of shit." (*Id.* at 9). Plaintiff maintains that on or around January 31, 2017, Defendant Lefebre said that Plaintiff wouldn't get his medication if he did not come out of his cell. Plaintiff further alleges that this Defendant said he wanted Plaintiff to come out of his cell so Defendant Lefebre could watch Plaintiff get beat-up. (*Id.*) Plaintiff notes that he was on lockdown at that time and, therefore, could not exit his cell. Plaintiff alleges that the actions and inactions of this Defendant lead to Plaintiff being assaulted with feces by another inmate. (*Id.*)

Defendant Gold

Plaintiff makes a general allegation that Defendant Gold was deliberately indifferent to the alleged systematic harassment Plaintiff faced in prison. (Docket No. 44 at 8-9). Plaintiff also alleges that Defendant Gold, among others, told other inmates that Plaintiff is "a piece of shit." (*Id.* at 9). Plaintiff maintains that on or around January 31, 2017, Defendant Gold said that Plaintiff wouldn't get any privileges if he did not come out of his cell. (*Id.*) Plaintiff alleges that the actions and inactions of this Defendant lead to Plaintiff being assaulted with feces by another inmate. (*Id.*)

Defendant Chase

Plaintiff alleges that on or about April 4, 2016, Defendant Chase received information "from the specific inmates threatening to 'kill' plaintiff if he wasn't relocated." (Docket No. 44 at 7). Plaintiff maintains that he was interrogated, but the other inmates

were not. (*Id.*) Plaintiff alleges that Defendant Chase told him that "we knew the individuals who threatened your life and we thought it was funny." (*Id.*)

Defendant Parlette

Plaintiff alleges that Defendant Parlette "aided" the August 31, 2016 attack that occurred while he was sleeping by opening Plaintiff's cell. (Docket No. 44 at 9). Plaintiff further alleges that Defendant Parlette opened the door to the cell even though he knew that Plaintiff faced "an excessive risk of attack." (*Id.*) Plaintiff also alleges that Defendant Parlette was responsible for another incident with a different inmate. Plaintiff states that Defendant Parlette told him the other inmate was not out of his cell, which then prompted Plaintiff to exit his cell. (*Id.*) Plaintiff alleges that ten minutes later Defendant Parlette let the other inmate out of his cell. (*Id.*) It is unclear if there was a fight of any kind on that day or if Plaintiff is alleging that just being out of his cell at the same time as this other inmate was the issue. (*Id.*)

Defendant Barbero

Plaintiff brings two allegations against Defendant Barbero. The first is a general allegation that Plaintiff informed this Defendant about the August 31, 2016 attack he sustained while in his cell. (Docket No. 44 at 8). Plaintiff does not allege any actions by Defendant Barbero with regard to this attack. The second is an allegation relating to incidents that occurred on August 3, 2016. Plaintiff alleges that after another inmate showed him a blade and threatened him, Barbero failed to protect him. (*Id.* at 8). Plaintiff alleges that this Defendant and Defendant Ortiz agreed to teach Plaintiff a lesson for "snitching." (*Id.*) Plaintiff alleges that Defendant Barbero took Plaintiff to a cold, isolated cell in intake where Defendant Barbero instructed his "underlings" to

torture Plaintiff. (*Id.*) Plaintiff maintains that "[t]he sexual taunts and harassments [sic] and humiliations lasted for (8) hours, into midnight, plaintiff was freezing and cold." (*Id.*) Plaintiff alleges that Defendant Barbero called Plaintiff a snitch and told other inmates. (*Id.*) Plaintiff further alleges that Defendant Barbero encouraged a white supremacist inmate to repeat his threats and that inmate said he would go to Plaintiff's cell to rape and beat Plaintiff. (*Id.*)

Defendant McVeigh

Plaintiff includes two somewhat general allegations against Defendant McVeigh. First, Plaintiff alleges that this Defendant, among others, received information that certain other inmates threatened to kill Plaintiff. (Docket No. 44 at 7). Plaintiff also alleges that Defendant McVeigh, among others, failed to investigate the on-going harassment of Plaintiff. (*Id.* at 8-9). Plaintiff does not allege any direct action or personal participation by this Defendant.

Defendant Davis

Plaintiff alleges that Defendant Davis failed to monitor or treat Plaintiff's "frequent concussions" and other injuries. (Docket No. 44 at 8). Plaintiff further alleges that Defendant Davis "was grossly negligent as the supervisor or other nurses" and failed to discipline them. (*Id.*)

Defendant Langoni

Plaintiff alleges that Defendant Langoni failed to protect him from an attack by two white supremacists that occurred on July 24, 2016. (Docket No. 44 at 7). Plaintiff maintains that he suffered serious injuries as a result of the attack. (*Id.* at 8). Plaintiff also alleges that Defendant Langoni failed to take reasonable measures to prevent an

attack on August 3, 2016 during which Plaintiff was attacked with feces. (*Id.*) Plaintiff also includes Defendant Langoni in his allegations surrounding the August 31, 2016 assault, but it is unclear what participation he alleges on this Defendant's part. Plaintiff maintains that due to "the actions of Langoni and Trudillo, the plaintiff was subjected to 'guard brutality' and 'excessive force' at the hands of Langoni and Trudillo plaintiff was brutally [battered] suffering concussions, disorientation, a busted tooth, and a fully bitten through lip." (*Id.* at 9). This is the same attack during which Plaintiff alleges Defendant Parlette opened his cell door so that other inmates could attack him. Therefore, it appears that Plaintiff is alleging that "guard brutality" is the failure to protect, not any direct physical attack by Defendant Langoni.

<u>Defendant Lea</u>

Plaintiff alleges that Defendant Lea called Plaintiff a "snitch" over an intercom and said "you're that punk that molested both of your daughters. [Y]ou like little girls . . . ." (Docket No. 44 at 8). Plaintiff alleges that this action started rumors about him and lead to harassment and threats. (*Id.*) He notes that as a result of Defendant Lea's accusations, other inmates "got involved," including the one who threatened him with a blade. (*Id.*)

<u>Defendant Decesaro</u>

Plaintiff alleges that Defendant Decesaro failed to take reasonable measures to prevent an attack on August 3, 2016 during which Plaintiff was attacked with feces. (Docket No. 44 at 8). Plaintiff alleges that Defendant Decesaro continually disregarded risks to Plaintiff's safety. (*Id.* at 8-9). Plaintiff does not allege any direct action or personal participation by this Defendant.

<u>Defendant Ortiz</u>

With regard to the incident that occurred on August 3, 2016, Plaintiff alleges that after another inmate showed him a blade and threatened him, Defendant Ortiz failed to protect him. (Docket No. 44 at 8). Plaintiff alleges that this Defendant accused Plaintiff of lying and then agreed with Defendant Barbero to teach Plaintiff a lesson for "snitching." (*Id.*) Plaintiff alleges that he told Defendant Ortiz about Defendant Lea calling him a "snitch" over the intercom approximately one week prior to the August 3, 2016 incident. (*Id.*) Plaintiff also alleges that Defendant Ortiz, among others, failed to investigate the on-going harassment of Plaintiff. (*Id.* at 8-9). Plaintiff also includes Defendant Ortiz in his allegations surrounding the August 31, 2016 assault. (*Id.* at 9). This is the incident when Plaintiff was allegedly attacked in his cell while sleeping. Plaintiff alleges that Defendant Ortiz told Plaintiff "if you don't come out and fight then you don't get shit." (*Id.*) Plaintiff alleges that a different Defendant, Defendant Parlette, opened his cell door despite Plaintiff's request for it to remain closed. (*Id.*)

<u>Defendant Olivette</u>

Plaintiff names Defendant Olivette once in the Fourth Amended Complaint. (Docket No. 44 at 9). He states: "After informing intel. Reed, Ortiz. Writing a grievance. And 30 minutes before requesting that she, Olivette, in the privacy of her office, take the necessary steps to prevent a specified fight with a specified offender who had threatened my life an hour after moving in I was attacked and defended myself, the offender was seriously injured." (*Id.*) Plaintiff does not allege any direct action or personal participation by this Defendant.

<u>Defendant Nurse Unknown</u>

Plaintiff alleges that Defendant Nurse Unknown "deprived Plaintiff of proper medical care" and "deprived Plaintiff of medication." (Docket No. 44 at 8). Plaintiff also alleges that this Defendant "called Plaintiff things encouraging other violent inmates to threats." (*Id.*) Plaintiff also alleges that, with regard to an incident that took place on January 31, 2017, Defendant Unknown Nurse told other inmates that Plaintiff is "a piece of shit" and that Plaintiff "doesn't get his medication." (*Id.* at 9). Plaintiff maintains that her "actions, inactions, and encouragement" led to Plaintiff being assaulted with feces again and harassed. (*Id.*)

<u>Defendant Tansey</u>

Plaintiff mentions Defendant Tansey once in the Fourth Amended Complaint. He states: "Defendant Tansy . . . has refused to properly treat Plaintiff's mental health needs, depriving Plaintiff of necessary psychiatric care, and therapeutic treatment." (Docket No. 44 at 8).

<u>Defendant Rowe</u>

Plaintiff alleges that Defendant Rowe "deprived Plaintiff of proper medical care." (Docket No. 44 at 8). Specifically, he alleges that she routinely gave him the wrong medication or refused to give him medication. (*Id.*) He maintains that she called him by a racial slur and that she lied and accused him of fraud. (*Id.*) Plaintiff alleges that this false accusation lead to disciplinary action against Plaintiff. (*Id.*) He also maintains that Defendant Rowe is a danger to the facility as a whole. (*Id.*)

<u>Defendant Vaughn</u>

Plaintiff alleges that Defendant Vaughn, along with other Defendants, systematically threatened and harassed him. (Docket No. 44 at 7). Plaintiff maintains that this Defendant told Plaintiff that he could have the Sureños put Plaintiff "6 feet deep." (*Id.*) Plaintiff also states that Defendant Vaughn called Plaintiff a "bitch" and a "snitch" over his speaker. (*Id.*)

<u>Defendant Olson</u>

Plaintiff alleges that he was attacked on March 19, 2016 by two members of the Sureños gang after Defendant Olson was notified that those individuals had threatened to kill Plaintiff. (Docket No. 44 at 7). Plaintiff maintains that the assault was the result of Defendant Olson's "conscious disregard to a known risk to Plaintiff's life." (*Id.*) Plaintiff further alleges that Defendant Olson and other Defendants received information on April 3, 2016 that other inmates threatened to kill Plaintiff. (*Id.*) Plaintiff maintains that the Defendants failed to interrogate the "killers" and disregarded a risk to Plaintiff. (*Id.*) Plaintiff alleges that Defendant Olson failed to protect him from an attack by two white supremacists that occurred on July 24, 2016. (*Id.*) Plaintiff maintains that he suffered serious injuries as a result of the attack. (*Id.* at 8). With regard to the incident that occurred on August 3, 2016, Plaintiff alleges that after another inmate showed him a blade and threatened him, Defendant Olson "failed to take protective measures" and failed to follow-up on an incident report. (*Id.*) Plaintiff also mentions that the August 31, 2016 incident followed Defendant Olson's "continual disregard." (*Id.* at 9). Finally, Plaintiff alleges that his Eighth Amendment rights were violated by Defendant Olson's

"deliberate indifference and refusal to segregate Plaintiff despite an obvious pattern of targeting a vulnerable inmate." (*Id.*)

## Defendant Unknown Sgt. in B-Unit

Plaintiff alleges that this Defendant was present during the August 3, 2016 incident when Plaintiff was attacked with feces. (Docket No. 44 at 8). Plaintiff alleges that this Defendant "actively encouraged, permitted, concealed the act and maliciously accused Plaintiff of flooding his cell." (*Id.*) Plaintiff further alleges that this Defendant left Plaintiff in inhumane living conditions. (*Id.*)

## Defendant Unknown Officer in A Unit

Plaintiff alleges that on January 31, 2017, this Defendant came over Plaintiff's speaker when Plaintiff requested toilet paper and told Plaintiff "you have to come out, in your cell hiding quit being a punk." (Docket No. 44 at 9). Plaintiff further alleges that this Defendant said "I'm about to roll your cell (open my door) and let the entire tier beat your ass." (*Id.*) Plaintiff does not allege that Defendant Unknown Officer opened Plaintiff's cell door.

## Defendant Murphy

Plaintiff alleges that Defendant Murphy "told an entire unit Plaintiff was an informant." (Docket No. 44 at 9).

## Defendant Barnes

Plaintiff alleges that Defendant Barnes told Plaintiff "Get your dumb black ass back in that cell. You're a rat piece of shit, you'll be back beat up in twenty four hours." (Docket No. 44 at 9).

Defendant Wagner

Plaintiff alleges that Defendant Wagner asked Plaintiff to beat-up another inmate who is a sex offender. (Docket No. 44 at 9). Plaintiff also alleges that Defendant Wagner said, "Nigger, you better stop talking to my 'girlfriend.'" (*Id.*) Plaintiff states that Plaintiff's case manager is the alleged girlfriend. (*Id.*)

## Standard

### Fed. R. Civ. P. 12(b)(1)

Under Rule 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss pursuant to Rule 12(b)(1) take two forms. First, a party may attack the facial sufficiency of the complaint, in which case the court must accept the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

### Fed. R. Civ. P. 8 and 12(b)(6)

As recently formulated by Judge Moore:

> Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it does not plead enough facts to state a claim to relief that is plausible on its face. A pleading that offers labels and conclusions or a formulaic recitation of the

elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss. Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.

. . .

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in a plaintiff's favor. However, when legal conclusions are involved in the complaint the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to those conclusions. Accordingly, in examining a complaint under Rule 12(b)(6), the court will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.

*Watts v. Donley*, No. 15-cv-00320-RM-KLM, 2015 WL 2330019, at *3-4 (D. Colo. May 14, 2015) (internal citations, quotation marks, and alterations omitted).

### Analysis

Defendants argue that all official capacity claims are subject to dismissal pursuant to the Eleventh Amendment. (Docket No. 48 at 2). They further argue that to the extent Plaintiff fails to allege personal participation of many Defendants, those claims as well as claims that are conclusory should be dismissed for failure to state a claim. (*Id.*) Defendants also argue that Plaintiff's failure to tie any alleged physical injury to the actions of any named Defendant means that his claims are barred by the Prison

Litigation Reform Act ("PLRA"). (*Id.*) Finally, Defendants argue that they are entitled to qualified immunity. (*Id.*)

Background

As an initial matter, the Court summarizes the information provided to Plaintiff earlier in this litigation. As part of the initial review of Plaintiff's original Complaint, the Court provided Plaintiff with information regarding the applicable standard. (Docket No. 6). Specifically regarding Eighth Amendment claims, the Court provided the following information.

> The Eighth Amendment is violated when prison officials act with deliberate indifference to a risk of serious harm to inmate health or safety, *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and "may be implicated not only to physical injury, but also by the infliction of psychological harm." *Benefield v. McDowall*, 241 F.3d 1267, 1271-72 (10th Cir. 2001). However, verbal abuse generally does not rise to an Eighth Amendment violation. *See Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir.1992) (recognizing that verbal threats and harassment are not actionable under the Eighth Amendment); *see also Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) ("Mere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death'"). With regard to a claim for failure to protect, prison officials have a duty to protect prisoners from harm, including harm caused by other prisoners. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). However, mere negligence does not violate the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Berry v. City of Muskogee*, 900 F.2d 1489, 1495 (10th Cir. 1990) (deliberate indifference requires a higher degree of fault than negligence or even gross negligence). To prevail on a failure to protect claim, a prisoner must show "that he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials acted with "deliberate indifference to inmate health or safety . . . ." *Farmer*, 511 U.S. at 834. "Deliberate indifference" means that the prison official knew of and disregarded an excessive risk to prisoner health or safety. *Id.* at 837.

(Docket No. 6 at 5-6). The Court also explained that in order to state a claim, Plaintiff had to allege personal participation of each named Defendant in a deprivation of Plaintiff's constitutional rights.

Personal participation requires an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations and quotations omitted); *Dodds v. Richardson*, 614 F.3d 1185, 1200-1201 (10th Cir. 2010). A supervisor can only be held liable for his own deliberate intentional acts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."). In order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

Finally, vague and conclusory allegations of a constitutional deprivation are insufficient to state an arguable claim for relief under § 1983. *See Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991), *aff'd*, 961 F.2d 916 (10th Cir. 1992). *See also Hall*, 935 F.2d at 1110 ("[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.").

(*Id.* at 7-8).

After the Court provided this information, Plaintiff filed his First Amended Complaint, but was again ordered to amend his claims because some of his claims were duplicative of another pending case and because the First Amended Complaint still did not meet the pleading requirements of Rule 8. (Docket No. 10 at 3-5). The Court again informed Plaintiff that:

To state a cognizable claim in federal court that complies with Rule 8, Mr. Wilson must describe briefly, plainly, and adequately the specific legal right allegedly violated and **all relevant facts** that support each claim, which includes explaining **what each named defendant did to him; when the defendant did it; and how the defendant's action harmed**

**him.** *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (emphasis added).

Moreover, Mr. Wilson is required to assert the personal participation of each named Defendant in the alleged violation and a blanket reference to "all Defendants" as the responsible party is generally not sufficient. To establish personal participation, Mr. Wilson must show in each claim how a named individual was responsible for the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159,166 (1985). In other words, there must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Conclusory allegations of supervisory liability are insufficient to state an arguable claim for relief. *See Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991), *aff'd*, 961 F.2d 916 (10th Cir. 1992). *See also Hall*, 935 F.2d at 1110 ("[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.").

(*Id.* at 4-5).

Plaintiff filed a Second Amended Complaint that did not meet Rule 8's pleading

requirements. As a result, the Court ordered Plaintiff to file a Third Amended Complaint.

(Docket No. 13). The Court again explained the applicable legal standards to Plaintiff.

Plaintiff is reminded that in order to state a cognizable claim in federal court that complies with Rule 8, Plaintiff must describe briefly, plainly, and adequately the specific legal right allegedly violated and all relevant facts that support each claim, which includes explaining what each named defendant did to him; when the defendant did it; and how the defendant's action harmed him. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). In addition, each distinct legal theory should be asserted as its own separate claim.

Moreover, pursuant to Rule 8, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A viable complaint must contain enough factual allegations to "state a claim to relief that is plausible on its face." *Id.* (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Plaintiff also is required to assert sufficient factual allegations that support a claim of supervisory liability for some of the named defendants. Conclusory allegations that Defendants were responsible in "enacting policies and practices ensuring a duty by officers to protect inmates themselves and maintain institutional security" are insufficient. As the Court previously stated, although a defendant can be liable in a § 1983 action based on his or her supervisory responsibilities, a claim of supervisory liability must be supported by allegations that demonstrate personal involvement, a causal connection to the constitutional violation, and a culpable state of mind. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767-69 (10th Cir. 2013) (discussing standards for supervisory liability). Therefore, in order to succeed in a '1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). And, denying or ignoring a grievance, by itself without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under § 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Whitington v. Ortiz*, 307 Fed. App'x 179, 193 (10th Cir. 2009) (unpublished) (stating that "the denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations") (internal quotation marks and citation omitted); *Davis v. Ark. Valley Corr. Facility*, 99 Fed. App'x 838, 843 (10th Cir. 2004) (unpublished) (sending "correspondence [to high-ranking prison official] outlining [a] complaint . . . without more, does not sufficiently implicate the [supervisory official] under § 1983").

(Docket No. 13 at 4-5). In that Order, the Court also warned Plaintiff that claims seeking "money damages against individual Defendants sued in their official capacities . . . are barred by sovereign immunity." (*Id.* at 6).

Plaintiff then filed his Third Amended Complaint. (Docket No. 14). Plaintiff later filed a motion to further amend his claims (Docket No. 35), which the Court granted (Docket No. 43). As a result, the operative complaint is the Fourth Amended Complaint (Docket No. 44).

Eleventh Amendment Immunity

Defendants correctly assert that to the extent Plaintiff is suing them in their official capacities for monetary damages, they are entitled to immunity pursuant to the Eleventh Amendment.  It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Therefore, to the extent that Plaintiff's claims against Defendants are brought against them in their official capacities for monetary damages, such relief is barred by the Eleventh Amendment, and those claims should be dismissed.

Personal Participation

As the Court has previously explained to Plaintiff, through his allegations he must show how each named individual was responsible for the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159,166 (1985). In other words, there must be an affirmative link between the alleged constitutional violation and each Defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

As detailed above, Plaintiff does not allege personal participation by some of the Defendants. The Court will not revisit its above summary of Plaintiff's claims. Instead, the Court incorporates the above information and concludes that Plaintiff does not allege personal participation by the following Defendants: Reed, Nunez, Lefebre, Gold,

Chase, Parlette, McVeigh, Langoni, Decesaro, Olivette, Nurse Unknown, Tansey, Olson, Unknown Sgt. in B-Unit, Unknown Officer in A Unit, Barnes, and Wagner. Accordingly, Plaintiff's claims against these Defendants should be dismissed.

Supervisory Liability

As the Court previously informed Plaintiff, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199. This is because officials who are not personally involved in the alleged violation are not subject to a civil rights claim under a *respondeat superior* theory simply because they hold positions of authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Instead, such an individual must know of the behaviour that allegedly violates a constitutional right and acquiesce in that behaviour. *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995).

Plaintiff's allegations against Defendants Romero, Little, and Davis center on their roles as supervisors. However, Plaintiff does not allege that any of these Defendants knew of and acquiesced in a violation of a constitutional right. Instead, he offers generalized statements such as that Defendant Romero and Little "failed to protect an obvious victim" (Docket No 44 at 7), that they "failed to take any protective measures" (*Id.* at 8), or that they "were negligible and deliberately indifferent for failure to investigate systematic harasment [sic] . . . ." (*Id.*) With regard to Defendant Davis,

Plaintiff alleges that she "was grossly negligent as the supervisor of other nurses failing to respond to pervasive negligences [sic] as well as failed to discipline or prosecute" Defendant Rowe. (*Id.* at 8). These allegations are not sufficient to state a supervisory liability claim. Accordingly, to the extent Plaintiff's claims against Defendants Romero, Little, and Davis are based on their supervisory roles, those claims should be dismissed.

Labeling Plaintiff a Snitch/Informant

Plaintiff alleges that Defendants Lea, Vaughn, and Murphy called him a snitch or informant. Specifically, Plaintiff alleges that Defendant Lea called Plaintiff a "snitch" and stated that Plaintiff molested his daughters over an intercom in the presence of other inmates. (Docket No. 44 at 8). Plaintiff alleges that this resulted in rumors, harassment, and threats by other inmates. (*Id.*) Plaintiff alleges that Defendant Vaughn told other inmates that Plaintiff was a "bitch" and a "snitch." (*Id.* at 7). Plaintiff does not allege that this lead to any threats, harassment, or other harm. Plaintiff alleges that Defendant Murphy "told an entire unit Plaintiff was an informant." (*Id.* at 9). Plaintiff does not link this allegation to any alleged harassment, threats, or other harm.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. A violation of the Eighth Amendment occurs when a prison official is deliberately indifferent to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Although prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury resulting from violence between inmates results in constitutionally liability. *Id.* at 833-34. An inmate asserting an Eighth Amendment claim must demonstrate: (1) that the harm

was "sufficiently serious" under an objective standard; and (2) that the prison officials had "subjective knowledge of the risk of harm" but did nothing to prevent such harm. *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008).

First, to satisfy the objective component of the standard, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To meet the subjective component, an inmate must show that the prison official was deliberately indifferent to his safety. *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (citing Farmer, 511 U.S. at 834). A prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The Tenth Circuit has held that labeling an inmate a snitch and informing other inmates of that label with knowledge of the obvious risk of danger associated with that label violates the Eighth Amendment. *See Benefield,* 241 F.3d at 1271-72; *see also Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (reversing the district court and finding that the plaintiff adequately alleged that, by labeling him a snitch, the prison deputy "intended to do harm . . . by inciting inmate's to beat him."). The Tenth Circuit further held that "allegations of a prison officer's deliberate disclosures of dangerous information about an inmate's status" can sufficiently state a claim under the Eighth Amendment. *See Brown v. Narvais*, 265 Fed. Appx. 734, 736 (10th Cir. 2008) (unpublished).

Defendants argue that Plaintiff's allegations are not sufficient to state an Eight Amendment claim because Plaintiff "does not connect [them] to a particular offender who overheard any of the correctional officers alleged statements" and that Plaintiff's

allegations do not state an objectively serious condition. (Docket No. 48 at 10). However, the Tenth Circuit has made clear that "allegations of a prison officer's deliberate disclosure of dangerous information about an inmate's status are sufficient to state a claim under the Eighth Amendment provided the alleged danger is facially concrete and plausible enough to satisfy basic pleading standards." *Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. 2008) (citations omitted). The court further made clear that if a defendant offers additional evidence that negates the alleged danger, such defendant could successfully defend against the claim. Here, Plaintiff alleges that Defendant  Lea called Plaintiff a "snitch" and stated that Plaintiff molested his daughters over an intercom in the presence of other inmates. (Docket No. 44 at 8). Plaintiff alleges that this resulted in rumors, harassment, and threats by other inmates. (*Id.*) While, physical injury is not required to state an Eighth Amendment claim in this context, *Northington*, 973 F.2d at 1525, Plaintiff further pleads that he was physically assault by other inmates on various occasions. Though Plaintiff does not tie those physical attacks directly to Defendant Lea's words, "a prisoner states an Eighth Amendment violation by alleging that a prison official intended to cause him serious harm by inciting other inmates to do violence against him." *Harris v. Matthews*, No. 09-cv-02322-REB-MEH, 2011 WL 3510931, at *5 (D. Colo. July 25, 2011). Again, physical injury is not required to state an Eighth Amendment claim in this context. Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Lea. Accordingly, the Court concludes that the motion to dismiss (Docket No. 48) should be denied to the extent it argues that Plaintiff's Eighth Amendment claim against Defendant Lea in his individual capacity should be dismissed.

Plaintiff's claims against Defendants Vaughn and Murphy are not linked to any potential harm or threats. Therefore, the Court finds that those allegations should be dismissed because the overall pleadings requirements are not met: Plaintiff has not alleged how the actions of these Defendants harmed him. *Nasious*, 492 F.3d at 1163.

<u>Failure to Provide Medical Care</u>

Plaintiff alleges that Defendant Davis "refused proper treatment or xray [sic]." (Docket No. 44 at 8). Plaintiff also alleges that Defendant Rowe "routinely gave Plaintiff the wrong medication or refused all together." (*Id.*)

There is no question that prison facilities must provide medical care to inmates, including mental health care. *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980). In order to state an Eighth Amendment claim for denial of medical care, Plaintiff must allege that these Defendants acted

> with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To prevail on a deliberate indifference claim, a plaintiff must establish both an objective and a subjective component. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014).
>
> "The objective prong of the deliberate indifference test examines whether the prisoner's medical condition was sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause. The subjective prong examines the state of mind of the defendant, asking whether the official knew of and disregarded an excessive risk to inmate health or safety."
>
> *Id.* (quotations, citations, and alterations omitted). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted).

*Templton v. Anderson*, 607 F.App'x 784, 786 (10th Cir. 2015).

With regard to Plaintiff's medical needs, Plaintiff fails to allege that any treatment (such as an x-ray) was ordered or that medication was prescribed. Further, Plaintiff does not allege facts showing that Defendants Davis or Rowe knew of and disregarded an excessive risk to inmate health or safety. Plaintiff's allegations do not sufficiently allege the mental state required to state an Eighth Amendment claim against Defendants Davis and Rowe. *Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*" (emphasis added)). Accordingly, the Court concludes that Plaintiff's claims against Defendants Davis and Rowe for failure to provide medical treatment should be dismissed.

<u>Defendants Barbero and Ortiz</u>

Plaintiff brings two allegations against Defendant Barbero. The first is a general allegation that Plaintiff informed this Defendant about the August 31, 2016 attack he sustained while in his cell. (Docket No. 44 at 8). Plaintiff does not allege any actions by Defendant Barbero with regard to this attack. Accordingly, this allegation fails to allege personal participation and should be dismissed for failure to state a claim.

The second allegation relates to incidents that occurred on August 3, 2016. Plaintiff alleges that after another inmate showed him a blade and threatened him, Barbero failed to protect him. (*Id.* at 8). Plaintiff alleges that Defendant Barero and Defendant Ortiz agreed to teach Plaintiff a lesson for "snitching." (*Id.*) Plaintiff alleges that Defendant Barbero took Plaintiff to a cold, isolated cell in intake where Defendant

Barbero instructed his "underlings" to torture Plaintiff. (*Id.*) Plaintiff maintains that "[t]he sexual taunts and harassments [sic] and humiliations lasted for (8) hours, into midnight, plaintiff was freezing and cold." (*Id.*) Plaintiff alleges that Defendant Barbero called Plaintiff a snitch and told other inmates. (*Id.*) Plaintiff further alleges that Defendant Barbero encouraged a white supremacist inmate to repeat his threats and that inmate said he would go to Plaintiff's cell to rape and beat Plaintiff. (*Id.*) Plaintiff does not allege that Defendant Ortiz participated in any of the alleged torture or saw any of what took place. Further, Plaintiff's other allegations against Defendant Ortiz do not allege personal participation. For these reasons, the Court concludes that the claims against Defendant Ortiz should be dismissed.

However, the claim that Defendant Barbero "tortured" Plaintiff for eight hours by putting him in a "freezing" cell and humiliating him requires further analysis. Plaintiff alleges that he was stripped and taken to a cold, isolated cell. (*Id.*) Plaintiff states that he "was freezing and cold." (*Id.*) Defendants do not substantively analyze this claim in their motion to dismiss. It appears that they attack this claim by asserting that all Defendants are entitled to qualified immunity and that Plaintiff's claims are barred by the PLRA. (Docket No. 48 at 13-15).

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Eighth Amendment is not violated unless the

conditions deprive a prisoner of "the minimal civilized measure of life's necessities.'"

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Also, Plaintiff cannot assert a cognizable claim under the Eighth Amendment unless he alleges that Defendant Barbero was deliberately indifferent to a substantial risk of serious harm. *See Farmer*, 511 U.S. at 834. This is a subjective test that requires that the prison official know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The Tenth Circuit has explained the mental state required:

> This awareness requirement exists because "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment" in a manner that violates the Eighth Amendment. *[Farmer]* at 844, 114 S.Ct. 1970. On the other hand, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate," as long as the official should have understood the possibility that harm might ensue. *Id.* at 842, 114 S.Ct. 1970. The test requires both knowledge and disregard of possible risks, a *mens rea* on a par with criminal recklessness. *Id.* at 836, 114 S.Ct. 1970. If an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability under this standard. *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970; *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995).
>
> Whether an official had "the requisite knowledge of a substantial risk" and ignored that risk is a question of fact. *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970. Because it is difficult, if not impossible, to prove another person's actual state of mind, whether an official had knowledge may be inferred from circumstantial evidence. *Id.*; *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 809-10 (10th Cir. 1999). Although, in general "[i]t is not enough to establish that the official should have known of the risk of harm," *Barney*, 143 F.3d at 1310 (emphasis added), in some cases "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970.

*DeSpain v. Uphoff*, 264 F.3d 965, 975-76 (10th Cir. 2001).

To be blunt, the Court is concerned about the alleged actions of Defendant Barbero. However, the Court's review of relevant case law leads the Court to conclude that Plaintiff's allegations against Defendant Barbero are not sufficient to survive a Rule 12 motion.

First, the Court turns to relevant case law. The Tenth Circuit has concluded that more harsh circumstances than those allegedly faced by Plaintiff did amount to cruel and unusual punishment. In *Mitchell v. Mayn*ard, 80 F.3d 1433 (10th Cir.1996), the plaintiff was stripped and left in a cell with no mattress, bedding, heat, hot water, or writing utensils and given only limited amounts of toilet paper. The court noted that "nighttime temperatures were in the 50's and [his unit] had no heating." *Id.* at 1439. Inmates were forced to "take cold showers because there was no water heater." *Id.* At a minimum, this lasted for 24 hours. *Id.* at 1443. Plaintiff was also deprived of his eyeglasses and exercise for an "extensive period of time." *Id.* The Tenth Circuit reversed the district court's conclusion that as a matter of law the plaintiff had not stated an Eighth Amendment claim and remanded for a new trial because it found there were factual issues about the conditions of confinement that should be determined by a jury. *Id.* at 1443-44. *In Gregory v. Wyse*, 512 F.2d 378 (10th Cir.1975), the plaintiff was stripped and confined in a maximum security cell for at least ten days, most of which was spent in solitary confinement for 24 hours per day in a tiny cell, and was forced to sleep on a cement slab, with constant light. *Id.* at 380. In that consolidated case, the Tenth Circuit affirmed the trial courts' dismissal of the claims, including the Eighth Amendment conditions of confinement claims. However, as part of its analysis, the Tenth Circuit "agreed it was cruel and unusual punishment to keep an inmate naked for

twelve days in a cell that had been stripped of its bedding, did not have adequate heating, ventilation, lighting or furnishing and was seldom cleaned." *Mitchell*, 80 F.3d at 1443 (citing to Gregory, 512 F.2d at 381).

More recently, the Tenth Circuit has discussed Eighth Amendment claims based on the conditions of confinement in an administrative segregation context. *See Silverstein v. Fed. Bur. of Prisons*, 559 F. App'x 739 (10th Cir. 2014). In that case, the court reminds us that there is no "static test" for determining what types of conditions violate the Eighth Amendment. *Id.* at 753. For example, the length of time of a condition is important, but it is the overall context that must be considered. *Id.* at 754. Further, psychological harm should be considered. *Id.*

In the instant case, Plaintiff was stripped and placed in a cold cell for eight hours and allegedly taunted. However, Plaintiff does not allege that he suffered any harm or damages as a result of the eight hours he spent in the cell. *Turner v. Felzien*, No. 11-cv-03033-PAB-MJW, 2013 WL 1093001, at *5 (D. Colo. Mar. 15, 2013) (citing *Mauchlin v. Bier*, No. 07-cv-02593-CMA-MEH, 2010 WL 419397 (D. Colo. Jan. 28, 2010)). Plaintiff's allegation that he was cold is not sufficient to allege harm. As a result, the Court concludes that he has failed to meet the objective prong and the Court need not address the subjective prong.

Second, because Plaintiff does not allege any physical injury, his Eighth Amendment conditions of confinement claim against Defendant Barero is barred by the PLRA. The PLRA provides that "[n]o civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see Perkins*

*v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999) ("[A]lthough mental and emotional distress can constitute a compensable injury in suits for damages under 42 U.S.C. § 1983 based upon violations of constitutional rights, § 1997e(e) provides that such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.") (internal quotation marks and brackets omitted). The PLRA does not define "physical injury." However, it is clear that while an injury "need not be significant to satisfy the physical injury requirement," a de minimis injury does not satisfy the statutory requirement. *See Clifton v. Eubank*, 418 F.Supp.2d 1243, 1245 (D.Colo. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003)). Being cold is not a physical "injury". *See Brosh v. Duke*, No. 12-cv-00337-CMA-MJW, 2012 WL 5289536 at *7 (concluding that being locked in a walk-in freezer for 20 minutes was not a "physical injury" for purposes of the PLRA).

For both of these reasons, the Court concludes that Plaintiff fails to state an Eighth Amendment claim against Defendant Barbero.

Qualified Immunity

Defendants generally argue that they are entitled to qualified immunity. (Docket No. 48 at 13-15). The only claim that the Court has not recommend be dismissed is Plaintiff's claim against Defendant Lea in his individual capacity regarding this Defendant calling Plaintiff a "snitch" and labeling him a child molester which, in turn, resulted in rumors, harassment, and threats by other inmates. (Docket No. 44 at 8). The Court concluded that these allegations were sufficient to state an Eighth Amendment claim against Defendant Lea.

As Judge Arguello has recently summarized,

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant raises qualified immunity as a defense, "a plaintiff must properly allege a deprivation of a constitutional right and must further show that the constitutional right was clearly established at the time of the violation." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). The Court is not required to address these inquiries in any specific order, *Pearson*, 555 U.S. at 236-37, and if a plaintiff fails to carry either part of his or her two-part burden, the defendant is entitled to qualified immunity, *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

*Wilson v. CSP Assistant Warden Shawn Foster*, No. 15-cv-02721-CMA-MJW, 2017 WL 6033693, at *3 (D. Colo. Oct. 11, 2017). Here, the Court has already concluded that Plaintiff's allegations against Defendant Lea are sufficient to state an Eighth Amendment claim. Therefore, the Court would next analyze whether the constitutional right was clearly established at the time of the violation.

However, Defendants fail to address this prong of the qualified immunity analysis and, instead, rely on their argument that Plaintiff did not state any constitutional violation. (Docket No. 48 at 15, Docket No. 51 at 7). This is important because as Judge Martinez held in *Sayed v. Lt. Page Virginia*, 2017 WL 5248048, at *3-4 (D. Colo. Nov. 13, 2017), a party who mentions qualified immunity as a defense but does not engage in any analysis to support the defense, waives the defense. *Id.* at *4 ("[B]ecause the Defendants mention the defense without engaging in the analysis, they have failed to raise the affirmative defense of qualified immunity. In failing to develop this argument, they have effectively waived the affirmative defense."); *see also Custard v. Balsick*, No. 15-cv-02221-REB-CBS, 2017 WL 131799, at *21 (D. Colo. Jan. 13, 2017) (declining to

address the qualified immunity defense because "Defendants provide no reasoning for why they believe a reasonable prison officer would not have understood that the conduct alleged in Claims 1 through 3 would violate the Eighth Amendment."); *Guion v. Spurlock*, No. 14-cv-00391-LTB-MEH, 2015 WL 394020 at *10 (D. Colo. Jan. 29, 2015) (recommending finding that one Defendant is not entitled to qualified immunity because [a]side from a conclusory statement regarding all of Plaintiff's claims, . . ., Defendants do not argue that the law regarding First Amendment retaliation was not clearly established."). In short, Defendants have not provided the Court with any legal analysis regarding whether Plaintiff's Eighth Amendment claim against Defendant Lea in his individual capacity was clearly established at the time.

The Court also notes that the Tenth Circuit has expressly held: "There is no dispute that the law in this circuit addressing this issue was well-established at the time of defendant's conduct. In *Northington*, we specifically held that labeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate. *Benefield*, 241 F.3d at 1271 (citing *Northington*, 102 F.3d at 1567 and collecting cases).

For these reasons, the Court concludes that Defendant Lea is not entitled to qualified immunity with regard to this claim.

### Recommendation

For the foregoing reasons, it is hereby RECOMMENDED that:

- Defendants' Motion to Dismiss Fourth Amended Complaint (Docket No. 48) be GRANTED in part and DENIED in part;

- The motion be DENIED to the extent is argues that Plaintiff's Eighth Amendment claim against Defendant Lea in his individual capacity be dismissed; and

- The motion be GRANTED to the extent it argues that all other claims be dismissed.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  February 15, 2018               *s/ Michael J. Watanabe*
Denver, Colorado               Michael J. Watanabe
United States Magistrate Judge